UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION



| | | |
|---|---|---|
| JILL SCOTT AND STUART SCOTT, INDIVIDUALLY AND AS NEXT FRIENDS OF MADISON SCOTT | § § § § | |
| Plaintiffs/Movants | § § | |
| V. | § § | |
| BAYLOR UNIVERSITY MEDICAL CENTER d/b/a KIMBERLY H. COURTWRIGHT & JOSEPH SUMMERS INSTITUTE OF METABOLIC DISEASE | § § § § § § | No. 3-02CV 1265R |
| Defendant/Respondent. | § | |

## RESPONSE TO EMERGENCY COMPONENT OF PLAINTIFFS' EMERGENCY MOTION TO REMAND

TO THE HONORABLE U.S. DISTRICT JUDGE JERRY BUCHMEYER:

COMES NOW, Defendant Baylor University Medical Center (hereinafter "Baylor" or "Defendant"), which makes and files this Response to Emergency Component of Plaintiffs' Emergency Motion to Remand, and in support thereof would respectfully show the Court as follows:

## I.

## INTRODUCTION

On June 7, 2002, seventeen (17) days before this matter was set for trial in County Court Number 5 of Dallas County, Texas, Plaintiffs' filed their Third Supplemental Petition alleging for the first time a right to recover damages as a result of Defendant's alleged violation of the Clinical Laboratories Improvement Act ("CLIA")(see Tab 2 to the appendix attached to the Plaintiffs' Emergency Motion to Remand). On June 17, 2002, ten days later, Defendant filed its

Notice of Removal to federal court. Plaintiffs filed their self-styled "Emergency Motion to Remand Improperly Removed Case" on June 20, 2002.

Defendant hereby responds to Plaintiffs' allegations that an emergency condition exists requiring an "immediate" remand to State Court. Defendant understands that the Court will be assigning a briefing schedule on the substantive issues surrounding the removal and thus, limits this response to the alleged emergency.

## II.

## <u>CHRONOLOGY OF EVENTS</u>

The following chart summarizes the key events discussed below.

| December 2000 | Plaintiffs filed a Petition for Bill of Discovery in state county court [no CLIA violation asserted]. |
|---|---|
| February 2, 2001 | Plaintiffs filed a Supplemental Petition, asserting a right to damages for the first time [no CLIA violation asserted] |
| November 19, 2001 | Plaintiffs filed their Second Supplemental Petition [no CLIA violation asserted]. |
| December 3, 2001 | Initial trial setting |
| December 6, 2001 | Former Judge David Gibson recused himself and declared a mistrial on the second day of voir dire. |
| June 7, 2002 | Plaintiffs filed their Third Supplemental Petition, asserting for the first time a violation of CLIA. |
| June 17, 2002 | Defendant removed the case to this Court. |
| June 19, 2002 | Thomas Farmer of The Law Offices of Frank L. Branson (Plaintiffs' counsel), contacted the state court coordinator and offered assistance in releasing the jury panel of 125. He was told by the Court Coordinator that the panel would be orally released the next day. |
| June 20, 2002 | Plaintiffs' attorney Michael Guajardo first contacted defense counsel about a motion to remand after the jury panel was released. |

| | |
|---|---|
| **June 24, 2002** | Second trial setting. |

## III.

## THE PROCEDURAL HISTORY OF THIS CASE REVEALS NO EMERGENCY

The procedural history of this case reveals quite clearly the utter lack of any emergency that would even arguably justify this Court shortening the time for proper briefing and consideration of Plaintiffs' Motion to Remand.  The first pleading of any kind filed in this case was in December 2000, when Plaintiff filed a Petition for Bill of Discovery against Defendant Baylor University Medical Center under Rule 202 of the TEXAS RULES OF CIVIL PROCEDURE.  Plaintiffs alleged in the Original Petition for Bill of Discovery that they wished to conduct discovery so that they could determine if there was a cause of action against Baylor.  On February 2, 2001, Plaintiffs' filed a Supplemental Petition asserting a right to damages.  Significantly, no mention was made of the Clinical Laboratories Improvement Act ("CLIA"), and no claim was asserted for violation of CLIA.

In December 2001, during the second day of voir dire, Judge David Gibson abruptly recused himself from the case and then resigned the bench.  The case was then reassigned to County Court at Law Number 5, where the matter was set for trial on June 24, 2002.  Plaintiffs requested a juror panel of 100+ prospective jurors for both the December 2001 and June 2002 trial settings.  The Court ordered that one hundred twenty-five (125) prospective jurors be brought down on June 20, 2002 to fill out questionnaires and to address hardship issues prior to jury selection.

Despite having filed a number of supplemental pleadings and having begun jury selection in December 2001, Plaintiffs' pleadings made no reference to CLIA and asserted no causes of action for violation of CLIA.  Remarkably, it was not until Plaintiffs' Third Supplemental

Petition, filed on June 7, 2002 – a mere seventeen days before trial – that Plaintiffs dramatically changed the landscape of this case by asserting for the first time a cause of action for violation of CLIA.

Although Baylor had thirty (30) days in which to remove the matter, Baylor filed its Notice of Removal ten (10) days later on June 17, 2002.  Plaintiffs filed their Motion to Remand on June 20, 2002.

IV.

<b><u>PLAINTIFFS' ARTIFICIAL "EMERGENCY"</u></b>

Plaintiffs appear to argue two (2) grounds for emergency relief.   The first is their desire to obtain a trial setting in the near future.  The second reason, though not actually set forth, is the loose suggestion that the needs of the minor child somehow constitute an emergency.  The only evidence offered in support of emergency consideration is the affidavit of Plaintiffs' attorney of record, Mr. Michael G. Guajardo.  Nowhere in that affidavit does Mr. Guajardo testify that Madison Scott's health will suffer if this Court does not grant expedited consideration of their motion to remand.  Rather, the only true basis for expedited consideration that is stated is that Plaintiffs believe they can obtain a new trial date this summer if the Court ultimately remands this case. Truly, the affidavit of Mr. Guajardo says nothing to warrant this Court's emergency consideration of Plaintiffs' motion to remand. Moreover, as will be demonstrated in the next section, it is the information that is omitted from Mr. Guajardo's affidavit that tells the complete story about Plaintiffs' attempt to create an artificial "emergency."

**A.   PLAINTIFFS REJECTED BAYLOR'S OFFER OF AGREED REMAND**

On June 20, 2002, only four days before the recent trial setting, counsel for Plaintiffs contacted counsel for Baylor regarding the Motion to Remand.  That day, Baylor offered to agree

to a remand if Plaintiffs would delete the federal CLIA claim from their pleadings. See ***Exhibits A, B and C*** (letters of James M. Stewart and John Scully). Plaintiffs summarily rejected Baylor's offer, insisting on their <u>entitlement</u> to the CLIA cause of action. (***Exhibit D*** (letter of Michael G. Guajardo).

Unbeknownst to Baylor, however, the day before that conversation took place, Tom Farmer, an attorney for Plaintiffs, had taken steps to ensure that trial would not proceed on June 24, 2002. Plaintiffs' counsel approached the Coordinator of County Court at Law Number 5 on June 19, 2002. He asked if the jury panel of one hundred-twenty five (125) they had requested had in fact been released from service and if not, offered the services of his office in calling the panel members to advise them that were being released from jury duty. The Coordinator advised Mr. Farmer that such a procedure would not work and that the panel would have to be verbally released at the courthouse the next day, 20 June 2002. (See Exhibit E, Affidavit of James M. Stewart).

With that knowledge in hand, Plaintiffs' did not contact Baylor to discuss a remand, much less an emergency remand, but waited until 20 June 2002 to raise the issue. Of course, by that time, the one hundred-twenty five (125) member panel had been released. If Plaintiffs truly believed that the trial setting presented an emergency, they would have addressed the remand issue <u>prior</u> to offering to help call off the one hundred-twenty five (125) member panel they had requested for the 20th.

### B.   AS CONFIRMED BY THE TRIAL COURT, THIS CASE CANNOT BE SET FOR TRIAL IN JULY, 2002

In his "Declaration" Mr. Guajardo mentions the possibility of this case being set for trial in state court for July 8, 2002. In paragraph nine (9) he advises that the Court Coordinator

expressed the "possibility" of beginning the trial of this case on 8 July 2002. In paragraph ten (10), however, he seems to imply that there is definitive setting on 8 July 2002.

On June 21, 2002, the Coordinator for County Court at Law Number 5 advised that there is no setting for July 8, 2002. (See Affidavit of James S. Stewart attached as *Exhibit E)* This goes without saying, since this case was removed from the county court. Furthermore, the Coordinator reports that a minimum of six (6) weeks is required to secure a jury panel of one hundred (100) or more. (See Affidavit of James M. Stewart attached as *Exhibit E).* This is critical because Plaintiffs have insisted on a panel of one hundred (100) or more throughout this case. In addition to the minimum of six weeks it will take to secure a panel of the size requested by Plaintiffs, various logistical difficulties exist involving a panel of that size, including finding a court room large enough to handle that many people for the voir dire process.

Even in the unlikely event that this Court were to remand this case before the end of June, the case likely would not be reset for trial until the Fall. A panel of one hundred (100) or more could not be secured until August at the earliest. Furthermore, August creates additional problems because the rotating asbestos docket has been assigned to County Court at Law Number 5 for that month. (See Affidavit of James M. Stewart as *Exhibit E).*

## C.    THE HEALTH OF THE MINOR

In the Affidavit of Mr. Guajardo, he *appears* to suggest, without ever explicitly stating, that the health of Madison Scott is a concern that warrants emergency consideration of the removal issue. Significantly, no evidence is presented to the Court to support such an assertion. This is for good reason, as the real facts are contrary to the unsupported assertion of counsel for Plaintiffs.

Dr. Lewis Waber is one of Madison Scott's treating physicians having first seen her in June of 2000. (See Exhibit F, Waber deposition, page 46 line 25 to page 47 line 5). He was deposed on 24 April 2002 and testified he last saw Madison on April 9, 2002 at a regularly scheduled visit. (See Exhibit F, Waber deposition, page 12 line 1-15). Dr. Waber testified there has been no medical treatment, care, therapy, device, equipment, educational or supportive therapy, or ancillary service of any kind he has recommended or prescribed that Madison has not received. (See Exhibit F, Waber deposition page 47 line 11- page 43 line 9). According to Dr. Waber, Madison has received all that he considers reasonable and necessary to address her condition and needs. (See Exhibit F, Waber deposition page 48 lines 10-13). He feels she has appropriate support systems in her family, (See Exhibit F, Waber deposition page 48 lines 14-17) and that she is extremely well cared for by Mr. and Mrs. Scott and all others who participate in her care. (See Exhibit F, Waber deposition page 48 line 25- page 49 line 3). Dr. Waber found Madison to be happy, alert and attentive. (See Exhibit F, Waber deposition page 45 lines 8-25).

In short, Madison Scott's needs are being met. There is no care or treatment her physician feels she needs that she is not already receiving. Her health does not present any concerns that might even arguably require emergency relief in this Court. She is extremely well cared for. There are no circumstances required for an emergency consideration of this important issue of federal law.

## V.

## SUMMARY

Ultimately, Plaintiffs' "Emergency Motion for Remand" presents two (2) issues for the Court. The primary issue is whether this Court should exercise its jurisdiction over the federal cause of action pled by Plaintiffs. Baylor removed the case because of Plaintiffs' invocation of

the federal Clinical Laboratories Improvement Act ("CLIA"). Plaintiffs seek to preempt a full and complete consideration of the removal/remand issue by raising the second issue -- the alleged emergency nature of the question. Baylor is entitled to a full and complete opportunity to present its position to this Court and Baylor is entitled to a full consideration of the issues by this Court that is not rushed or hampered by the assertion of an artificial emergency.

Plaintiffs chose to plead CLIA 17 days before trial. Plaintiffs chose to act in a manner inconsistent with an emergency by offering to assist with the dismissal of the jury panel before raising the remand issue with the Defendant or this Court. All of Madison Scott's needs, medical, therapeutic, social and otherwise, have been and continue to be fully met. There is nothing her physician feels she needs that she is not already receiving.

There being no emergency, Defendant requests this Court enter a briefing schedule which will allow for a full and complete evaluation of the issue of this Court's jurisdiction over the federal claims asserted by Plaintiffs.

**WHEREFORE, PREMISES CONSIDERED**, Defendant Baylor University Medical Center respectfully prays that this Court deny Plaintiffs' Motion for Emergency Consideration of the Motion to Remand, and for such other and further relief, both at law and in equity, to which Defendant may be justly entitled.

Respectfully Submitted,

STEWART & STIMMEL, L.L.P.
1701 Market Street
Suite 318, LB 18
Dallas, Texas 75202
(214) 752-6995
(214) 752-6929 - FAX

By: _____
James M. Stewart
Bar No. 19211100

ATTORNEY FOR DEFENDANT
BAYLOR UNIVERSITY MEDICAL CENTER

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served upon all attorneys of record via:

_____ Certified Mail/Return Receipt Requested
__X__ Telephonic Document Transfer (FAX)
_____ Hand Delivery
_____ Regular Mail

Dated: 6/25/02

_____
James M. Stewart