UNITED STATES DISTRICT COURT
NORTHEN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JILL SCOTT AND STUART SCOTT, § | | |
| INDIVIDUALLY AND AS NEXT § | | |
| FRIENDS OF MADISON SCOTT § | | |
| Plaintiffs/Movants § | | |
| § | | |
| VS. § | | |
| § | | |
| BAYLOR UNIVERSITY MEDICAL § | NO. 3-02CV 1265R | |
| CENTER d/b/a THE KIMBERLY § | | |
| H. COURTWRIGHT & JOSEPH § | | |
| SUMMERS INSTITUTE OF § | | |
| METABOLIC DISEASE, § | | |
| Defendant/Respondent. § | | |



## PLAINTIFFS' OBJECTION TO FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE

Plaintiffs Jill Scott and Stuart Scott (the Scotts), pursuant to 28 U.S.C. § 636 (b), hereby file their written objection to the findings, conclusions, and recommendation of the U.S. Magistrate Judge entered in the above matter on November 4, 2002, and in support thereof, would show as follows:

1.  With only one exception, the Scotts wholly embrace and agree with the "Findings, Conclusions and Recommendation of the United States Magistrate Judge" entered in the above matter on November 4, 2002. The Magistrate Judge correctly found and concluded that: (1) the Scott's motion for the assessment of costs, attorney fees and sanctions was timely as a matter of law; (2) the petition for removal filed by the Defendant Baylor Hospital ("Baylor") was objectively meritless; and (3) the amount of $25,812.50 would be a fair and reasonable amount for Baylor to pay for attorney fees incurred in responding to the petition for removal and securing the remand of the

case to state court, pursuant to 28 U.S.C. § 1447 (c). While the Magistrate Judge did not recommend the award all of the attorney fees Plaintiffs sought, the Magistrate Judge's analysis of the facts and the law relevant to these issues was careful, meticulous, and thorough, and Plaintiffs believe that no legitimate complaint or objection may be raised as to these findings and conclusions. Thus, Plaintiffs have no complaint or objection regarding the ultimate recommendation that the amount of $25,812.50 be awarded and assessed against Baylor as attorneys fees.

2. In addition to attorneys fees, Plaintiffs sought to hold Baylor responsible for the economic losses Plaintiffs have sustained by virtue of the postponement and delay of their case that resulted from Baylor's improper removal. As proof of the proper amount of such loss and damage, Plaintiffs submitted incontrovertible evidence that ***Baylor itself had previously admitted in open court that the sum of $82,720.00 per month represented fair and reasonable compensation to the Plaintiffs for any delay of their case occasioned by Baylor***. However, with respect to Plaintiffs' effort to hold Baylor responsible for the economic loss and damage caused by its improper removal, the Magistrate Judge stated as follows:

> Plaintiffs seek $82,720.00 per month for each month the state court trial has been delayed in this case due to Baylor's improper removal. [citation omitted]. However, Plaintiffs cite to no authority that would allow this Court, through its inherent powers, to impose sanctions of this variety and magnitude against Baylor *even if the Court were to conclude that Baylor acted in bad faith*. [emphasis original]. As such, Plaintiffs' motion should be DENIED as to the $82,720.00 per month in other sanctions.

(Findings, Conclusions, and Recommendation, p. 7). Based upon the conclusion that this type of sanction could not be assessed under the Court's inherent powers, the Magistrate Judge did not reach the issue of whether Baylor or its counsel acted in bad faith, and declined to award any amount for Plaintiffs' economic loss.

3.      With all respect to the Magistrate Judge, Plaintiffs believe there is good authority for the proposition that a Court, in the exercise of its inherent powers, may direct that a litigant be fully compensated for the injury, loss and damage occasioned by an opposing party's bad faith conduct. It is well established that in the exercise of its civil contempt jurisdiction, a court may fashion sanctions and remedies which compensate the complaining party for losses sustained by virtue of the offending conduct. American Airlines, Inc. v. Allied Pilots Ass'n, 228 F.3d 574, 584 - 5 (5th Cir. 2000) *cert. denied* 531 U.S. 1191 (2001) and cases cited therein; *see also* American Airlines, Inc. v. Allied Pilots Ass'n, 53 F.Supp. 2d 909 (1999) aff'd 228 F.3d 574 (5th Cir. 2000) *cert. denied* 531 U.S. 1191 (2001) (assessing $45 million as compensation for civil contempt).[1]  Civil contempt jurisdiction is merely one facet and component of the broader "inherent power" that a court possesses to manage its own affairs. As the U.S. Supreme Court noted in Chambers v. NASCO, Inc., 501 U.S. 32 (1991):

> "It has long been understood that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution," powers "which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." [citations omitted]. For this reason, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." [citations omitted]. These powers are "governed not by rule or statute, but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Link v. Wabash R. Co., 370 U.S. 626, 630 -631 (1962). ...[I]t is firmly established that "[t]he power to punish for contempts is inherent in all courts." [citations omitted]. This power reaches both conduct before the court and that beyond the court's confines, for "[t]he underlying concern that gave rise to the contempt power was not . . . merely the disruption of court proceedings. Rather, it was disobedience to the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of trial. [citations omitted]."

---

[1] *Accord* Matter of General Motors Corp., 61 F.3d 256, 259 (4th Cir. 1995); Halderman by Halderman v. Pennhurst State School, 49 F.3d 939, 941 (3rd Cir. 1995); United States v. Berg, 20 F.3d 304, 311 (7th Cir. 1994).

501 U.S. at 43- 4. Given that a court, in the exercise of its *civil contempt* powers, may fashion whatever sanction or remedy that is appropriate to compensate the injured party, there is no principled reason to deny that same authority to a court in the exercise of its broader "inherent powers,' particularly where the former is but one component of the latter. *Id.*

4.  As such, Baylor and/or its counsel may be responsible for the economic loss, injury, and damages Plaintiffs sustained by virtue of the delay in the resolution of their case, if: (1) Baylor and/or its counsel acted in "bad faith;" and (2) there is evidence of the appropriate amount of the loss, injury, and damages. Because the Magistrate Judge's view as to the scope of its "inherent power" was too narrow and limited, the Magistrate Judge did not address the issue of "bad faith." However, the fact that Baylor's was objectively meritless certainly raises an inference of "bad faith," and Plaintiffs, in their briefing to the Court, pointed to other evidence strongly suggestive of "bad faith" on the part of Baylor and/or its counsel.

5.  Plaintiffs also presented evidence (indeed, compelling evidence) as to the appropriate amount to award them for their economic loss, injury, and damages. Plaintiffs established that Baylor itself, through counsel, admitted in the state court proceedings that the sum of *$82,720.00 per month would represent fair and reasonable compensation to the Scotts for any delay in the trial of the case occasioned by Baylor*, and in fact made an unequivocal offer to pay such amounts.[2] Presumably, Baylor and its counsel would not have made such an offer if they felt that this amount would over-

---

[2] The Magistrate Judge pointed out in the Findings, Conclusions and Recommendation that the Scotts rejected Baylor's offer and instead sought a trial without further delay. (Findings, Conclusions, and Recommendation, p. 7, n. 2). However, Plaintiffs were not seeking to hold Baylor responsible on the theory that there was a binding stipulation or agreement to pay such amounts, but were instead utilizing Baylor's offer as an admission as to the appropriate amount of compensation for delay. Viewed in this light, the Plaintiffs' rejection of Baylor's offer signifies only that the Plaintiffs felt that Baylor's offer was *inadequate.*

compensate the Scotts for the effect of a delay in the trial. Baylor's admissions certainly constituted some evidence as to the proper amount of Plaintiffs' loss.

6. In the final analysis, an award of attorney fees - even a substantial award in the amount of over $25,000 - leaves Baylor in a position of *having substantially benefitted* from its own meritless and bad faith removal petition. This case was set for trial in state court (and would have been tried, if not for Baylor's removal petition) almost *five months ago*, and as a direct and proximate result of Baylor's improper removal of the case, the case will not be reached for trial for at least several more months. By the admission of Baylor and its counsel in the state court proceeding (through their offer to pay damages for any delay they caused), each month of delay that they could obtain was worth $82,720.00 to them. Thus, to date, Baylor has obtained a postponement of the trial worth, by its own admission, over $400,000 for the price of a $25,000 attorney fee award. In effect, the resolution recommended by the Magistrate Judge allows Baylor to reap a substantial reward for the filing of an objectively meritless (and, in Plaintiffs' view, bad faith) removal petition, and creates an incentive for Baylor and other similarly situated litigants to do the same thing in other cases where a continuance of a state court action is viewed as being substantially valuable.

7. For the foregoing reasons, Plaintiffs OBJECT to the "Findings, Conclusions and Recommendation of the United States Magistrate Judge" entered in the above matter on November 4, 2002, and requests that the Court: (a) determine whether Baylor acted in "bad faith;" and (2) find, upon a determination of Baylor's "bad faith," that the Plaintiffs are fully entitled to recover for all injury, losses, and damages occasioned by Baylor's delay of the state court proceedings.

Respectfully submitted,

THE LAW OFFICES OF
FRANK L. BRANSON, P.C.


*[signature]*
FRANK L. BRANSON
State Bar No. 02899000
**MICHAEL G. GUAJARDO**
State Bar No. 00784183
**C. MICHAEL CLARK**
State Bar No. 04275040
4514 Cole Avenue, 18th Floor
Dallas, Texas 75205
(214) 522-0200
(214) 521-5485 Fax

**ATTORNEYS FOR PLAINTIFFS**


**BURROW & PARROTT**
**ALICE OLIVER-PARROTT**
State Bar No. 20210800
1301 McKinney St.
Houston, Texas 77010-3092
(713) 222-6333
(713) 650-6333 Fax

**AD LITEM**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing has been sent by U.S. Certified Mail, Return Receipt Requested and/or Hand-Delivered to all counsel of record on the _14th_ day of November, 2002.

*[signature]*
C. Michael Clark

Respectfully submitted,

THE LAW OFFICES OF
FRANK L. BRANSON, P.C.

*[signature]*

**FRANK L. BRANSON**
State Bar No. 02899000
**MICHAEL G. GUAJARDO**
State Bar No. 00784183
**C. MICHAEL CLARK**
State Bar No. 04275040
4514 Cole Avenue, 18th Floor
Dallas, Texas 75205
(214) 522-0200
(214) 521-5485 Fax

**ATTORNEYS FOR PLAINTIFFS**

**BURROW & PARROTT**
**ALICE OLIVER-PARROTT**
State Bar No. 20210800
1301 McKinney St.
Houston, Texas 77010-3092
(713) 222-6333
(713) 650-6333 Fax

**AD LITEM**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing has been sent by U.S. Certified Mail, Return Receipt Requested and/or Hand-Delivered to all counsel of record on the _14th_ day of November, 2002.

*[signature]*
C. Michael Clark